UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

HAZIZ CURET,

                              Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                  2:14-cv-2703 (DRH)(SIL)

    - against -

UNITED STATES OF AMERICA,

                              Defendant.
--------------------------------------------------------X

**APPEARANCES**

**CANNON & ACOSTA LLP**
Attorneys for Plaintiffs
1923 New York Avenue
Huntington Station, NY 11746
By:    L. Michael Davicino, Esq.
         Roger Acosta, Esq.
         Gary Small, Esq.
         Patrick W. Cannon, Esq.

**UNITED STATES ATTORNEYS OFFICE**
Attorneys for Defendants
610 Federal Plaza
Central Islip, NY 11722
By:    Bridget M. Rhode, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff-Decedent, Haziz Curet ("Plaintiff") commenced this action against the United States ("Defendant") asserting claims under the Federal Tort Claims Act ("FTCA"). The Complaint alleges that Plaintiff was hit while riding his bicycle by a Post Office truck, and the resulting personal injury was due to negligence of an employee of the United States Postal Service acting within the scope of her employment. (Complaint at 1 (Apr. 30, 2014) (DE 1).)

Presently before the Court is: (1) Defendant's motion to dismiss for failure to timely substitute a party pursuant to Fed. R. Civ. P. 25(a); and (2) Plaintiff's cross-motion for an extension of time to substitute Plaintiff's son—the administrator of Plaintiff's estate—as the plaintiff in this litigation. For the reasons set forth below, Defendant's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

On August 13, 2013, the Complaint alleges that an employee of the United States Post Office was operating a vehicle "that was traveling over and along the public thoroughfare" and came into contact with the Plaintiff. (Complaint at 3 (DE 1).)

On April 30, 2014, Plaintiff filed his complaint against the United States, claiming that he was struck by a Post Office vehicle and that he was entitled to a sum sufficient to "adequately compensate plaintiff; together with the costs and disbursements of this action and for any and such other relief as the Court may deem just and proper[.]" (*Id.* at 5.)

On June 7, 2014, Defendant the United States filed its Answer. (DE 4.) Magistrate Judge Locke held several status conferences in September and December, 2014, regarding the discovery schedule. Judge Locke certified that discovery was complete by Order dated July 23, 2015. The parties then requested a settlement conference on July 27, 2015, which was set for October 1, 2015.

On or about September 9, 2015, Plaintiff passed away for unrelated reasons. (Suggestion of Death at 1 (DE 16).) On September 22, 2015, Plaintiff's counsel requested a stay on the basis that they had been informed by Plaintiff's family that he had recently passed away. (Request for Stay at 1 (DE 15).) That same day the United States filed a Suggestion of Death upon the record as to Plaintiff. (Suggestion of Death at 1.) On September 28, 2015, the Court granted the

request for a stay, adjourned the settlement conference, and directed Plaintiff to file a status report no later than January 8, 2016.

On January 5, 2016, Plaintiff's counsel again moved for a 60-day stay, which the Court granted. (Letter Motion at 1 (DE 17).) The Court granted such stay until March 22, 2016. On March 22, 2016, Plaintiff's wife wrote a letter to the Court explaining that her deceased husband's "lawyer of three years does not want to move forward with the case anymore" and requesting "more time to find another lawyer." (March 22, 2016 Letter from Martha Curet at 1 (DE 21).)

On June 14, 2016, Judge Locke scheduled a conference for June 30, 2016. On June 29, 2016, Plaintiff's new attorney Patrick Cannon filed a Notice of Appearance. (Notice of Appearance (DE 22).) On August 18, 2016, Christopher Curet, Decedent's son, retained counsel to petition the Surrogate Court to appoint him administrator of his father's estate. (Cross-Motion Ex. C (DE 33).)

On September 30, 2016 and December 12, 2016, Judge Locke held additional status conferences. Also on December 12, 2016, the United States filed a letter to request a pre-motion conference to seek dismissal pursuant to Federal Rule of Civil Procedure 25(a)(1) for Plaintiff's failure to timely substitute a proper party. (Dec. 12, 2016 Letter from James Knapp at 1 (DE 27).) On January 4, 2017, this Court held a pre-motion conference and set a briefing schedule for the motion to dismiss.

On January 23, 2017, Plaintiff's son was appointed administrator of Plaintiff's estate. (Mem. of Law in Support of Cross-Motion at 4.) On February 21, 2017, Plaintiff filed a Certificate of Appointment of Administrator and a pre-motion conference letter for a motion to substitute the administrator of the Plaintiff's estate pursuant to Fed. R. Civ. P. 25(a). On March

15, 2017, Defendant filed this Motion to Dismiss and Plaintiff filed a Cross-Motion to Substitute a Party.

## LEGAL STANDARD

Under Fed. R. Civ. P. 25(a)(1), substitution of a party due to death for a claim that is not extinguished may be done by court order. However, "i]f the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1).

Despite the use of "must" in Rule 25(a)(1), Courts have discretion to extend this 90-day period for good cause pursuant to Fed. R. Civ. P. 6(b). Courts may grant an extension "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b); *see also Zeidman v. Gen. Accident Ins. Co.*, 122 F.R.D. 160, 161 (S.D.N.Y. 1988) (explaining that Fed. R. Civ. P. 6(b) "works in conjunction with Rule 25(a)(1) to provide the intended flexibility in enlarging the time for substitution.") As the Seventh, Ninth, and Tenth Circuit Court of Appeals have found, the "history of Rule 25(a) and Rule 6(b) makes it clear that the 90-day time period was not intended to act as a bar to otherwise meritorious actions, and extensions of the period may be liberally granted." *Zanowick v. Baxter Healthcare Corporation*, 850 F.3d 1090, 1094 (9th Cir. 2017) (citing *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993)); *see also United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1035 (10th Cir. 1974) (stating that under Rule 25, a "discretionary extension should be liberally granted absent a showing of bad faith on the part of the movant for substitution or undue prejudice to other parties to the action.").

The Supreme Court has previously laid out a four-part test for to determine "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 388 (1993).

In *Pioneer*, the Supreme Court explained that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* The Supreme Court further stated that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the post for our purposes, 'to leave undone or unattended to *especially through carelessness*.'" *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* (1983) (alterations omitted) (emphasis in original)). The Supreme Court ultimately held that the determination of "whether a party's neglect of a deadline is excusable . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission [including] . . . "[1] the danger of prejudice to the [other party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

The Second Circuit has explained that "despite the flexibility of 'excusable neglect'" and the fact that three of the factors in the four-factor *Pioneer* test "usually weigh in favor of the party seeking the extension, we and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" *Sillivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). In other words, even if three of the factors suggest that the moving party should receive an extension, if the reason for the delay was within the reasonable control of the movant an extension will not necessarily be granted.

The Second Circuit has "taken a hard line" on excusable neglect, finding that while substantial rights may be forfeited if they are not asserted within the established time limits, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations

were not rigorously enforced[.]" *Id.* at 367–68. Moreover, where "'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will in the ordinary course, lose under the *Pioneer* test.'" *Id.* (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250–51 (2d Cir. 1997)).

Courts have found excusable neglect in the Rule 25 context to include "difficulty in appointing an administrator . . . where there is a prompt application for such an appointment." *Kernisant v. City of New York*, 225 F.R.D. 422, 428 (E.D.N.Y. 2005). Courts have found that excusable neglect does *not* include attorney inadvertence or an attorney's heavy caseload. *See, e.g.*, *Steward v. City of New York*, No. 04-CV-1509, 2007 WL 2693667, at *6 (E.D.N.Y. Sept. 10, 2007). Courts in the Eastern District of New York have previously declined to find excusable neglect where an administrator did not petition the Surrogate Court for more than six months after plaintiff died, and for more than two weeks after the court issued an order setting forth deadlines for substituting a party. *Lungu v. New Island Hosp./St. Joseph Hosp,*, No. 11-CV-755, 2012 WL 3115930, at *2 (E.D.N.Y. 2012). In *Lungu*, the court found that the administrator provided no explanation for such delay nor did he claim any difficulty in seeking appointment of an administrator. *Id.* A court in the Southern District of New York has held that the "argument for not finding excusable neglect is strengthened by the fact that plaintiff's heirs were partially at fault in the failure to move to timely substitute parties." *Zeidman*, 122 F.R.D. at 162 (plaintiff's heir was reluctant to take on the role of administrator of plaintiff's estate until learning she could personally profit, which greatly contributed to the delay).

## DISCUSSION

Applying the four-part *Pioneer* test to the facts at hand, the Court finds that the delay by Plaintiff's counsel and the administrator of Plaintiff's estate does not constitute excusable

6

neglect, and therefore the Motion to Dismiss is granted and the Cross-Motion to Substitute is denied.

Under prong 1 of the *Pioneer* test, there is some danger of prejudice to Defendant from the delay. Delay alone can be prejudicial "due to the unnecessary imposition of the burdens of prolonging litigation." *Zeidman*, 122 F.R.D. at 162. Here, the proceedings have been delayed for over two years based on Plaintiff's death and the attending back and forth regarding substitution. Two years certainly seems sufficient to cause prejudice to Defendant.

Under prong 2 of the test, there has been an exceedingly long delay. This Court granted several extensions for the time to substitute a party under Rule 25(a), over Defendant's opposition, the last of which expired on March 22, 2016. While Plaintiff's wife submitted a letter on March 22 requesting more time, Plaintiff's counsel did not move to substitute until almost a full year later, on March 15, 2017. Without extensions the original 90-day deadline under Rule 25(a) would have expired in December 2015, which means that Plaintiff's heirs took almost fifteen additional months to substitute a party.

Plaintiff's counsel offers no justification for such delay nor do they state that there was any difficulty in appointing an administrator. Counsel merely offers that "Plaintiff Decedent in the instant matter did not move earlier to substitute the Administrator of the Estate as the plaintiff in the litigation because the Administrator was not appointed until January 23, 2017." (Mem. of Law in Support of Cross-Motion at 3.) Counsel makes no attempt to answer the obvious responsive question of why no administrator appointed was until January 23, 2017. The letter from Plaintiff-Decedent's wife on March 22, 2016, stating that her deceased husband's "lawyer of three years does not want to move forward with the case anymore," is neither offered for nor

is it sufficient for the Court to infer why there was a fifteen month delay in appointing an administrator.

Notably, Plaintiff-Decedent's son did not hire a lawyer to petition Surrogate Court until mid-2016; almost a year after the Notice of Death was filed on the docket and five months after his mother sent the letter asking for more time to find a lawyer. Surely, it takes less than 11 months to find an estate lawyer. Moreover, even once an administrator was appointed, Plaintiff's counsel did not move to substitute for another nearly two months.

Under prong 3, as stated above, no acceptable reason has been provided for the delay. This leaves the Court to surmise that the delay was caused by Plaintiff's heirs' failure to timely hire counsel, petition the Surrogate Court, and file a motion for substitution. The delay was unquestionably within the heirs' control, given that once Plaintiff's son hired new counsel to petition the Surrogate Court he was appointed administrator within five months. While five months is longer than the 90-day period provided for under Rule 25(a), it is certainly shorter than the amount of time provided by this Court in extensions.

Under the final prong, the Court assumes that the Plaintiff's heirs acted in good faith despite the fact that there is little evidence supporting this conclusion in the record. However, even concluding that Plaintiff's heirs acted in good faith, the other three factors insurmountably weigh against finding that the delay here was caused by excusable neglect. Eighteen months to move to substitute a party without providing any reason or justification is inexcusable.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted and Plaintiff's Cross-Motion to Substitute is denied. This matter is dismissed with prejudice, and the Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
November 29, 2017

/s/
Denis R. Hurley
Unites States District Judge